EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Aixa Díaz Mercado<br>    Recurrida<br><br>          v.<br><br>Oficina del Coordinador General para el Fideicomiso Socioeconómico y Autogestión<br>    Peticionaria<br><hr>Ivelisse Marrero Marcano<br>    Recurrida<br><br>          v.<br><br>Administración de Servicios de Salud Mental y Contra la Adicción (ASSMCA)<br>    Peticionaria<br><hr>Idalia Alberty Beltrán y otros<br>    Recurridos<br><br>          v.<br><br>Administración de Servicios y Desarrollo Agropecuario<br>    Peticionaria | Certiorari<br><br>2013 TSPR 20<br><br>188 DPR ____ |

Número del Caso: CC-2010-1015
                 CC-2011-296
                 CC-2011-678


Fecha: 25 de febrero de 2013


Tribunal de Apelaciones:

        Región Judicial de San Juan, Panel I
**CC-2010-1015**
Oficina de la Procuradora General:

        Lcda. Irene Soroeta Kodesh
        Procurada General

        Lcda. Leticia Casalduc Rabel

Subprocuradora General

Lcda. Zaira Girón Anadón
Subprocuradora General

Lcda. Miriam Álvarez Archilla
Procuradora General Auxiliar

Abogados de la Parte Recurrida:

Lcda. Griselle Ortiz Trinidad
Lcdo. José R. Pérez Ayala
Lcda. Gwendollyn Feliciano Reyes

**CC-2011-296**
Oficina de la Procuradora General:

Lcda. Leticia Casalduc Rabel
Subprocuradora General

Lcda. María Umpierre Marchand
Procuradora General Auxiliar

Abogados de la Parte Recurrida:

Lcdo. José R. Pérez Ayala
Lcda. Griselle Ortiz Trinidad
Lcda. Gwendollyn Feliciano Reyes

**CC-2011-678**
Oficina de la Procuradora General:

Lcda. Leticia Casalduc Rabel
Subprocuradora General

Lcda. Karla Z. Pacheco Álvarez
Procuradora General Auxiliar

Abogados de la Parte Recurrida:

Lcdo. José Elvin Hernández Durán

Materia: Sentencia y Opinión Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Aixa Díaz Mercado<br>    Recurrida<br><br>        v.<br><br>Oficina del Coordinador<br>General para el<br>Fideicomiso<br>Socioeconómico y<br>Autogestión<br>    Peticionaria | CC-2010-1015 | |
| Ivelisse Marrero Marcano<br>    Recurrida<br><br>        v.<br><br>Administración de<br>Servicios de Salud<br>Mental y Contra la<br>Adicción (ASSMCA)<br>    Peticionaria | cons. con<br><br><br>CC-2011-296 | Certiorari |
| Idalia Alberty Beltrán y<br>otros<br>    Recurridos<br><br>        v.<br><br>Administración de<br>Servicios y Desarrollo<br>Agropecuario<br>    Peticionaria | CC-2011-678 | |

SENTENCIA

En San Juan, Puerto Rico, a 25 de febrero de 2013.

En esta ocasión nos corresponde determinar si erró el foro apelativo intermedio al no sostener la determinación de la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (C.A.S.A.R.H.) de desestimar, fundamentada en el Art. III de su Reglamento

Procesal[1] y sin la necesidad de una vista evidenciaria previa a tal desestimación, unas apelaciones en las que se alegaba discrimen en la ejecución de unos despidos en virtud de la intimada Ley Núm. 7-2009.[2] Esto es, los tres casos mencionados en el epígrafe de esta Sentencia tienen como punto de encuentro la controversia acerca de si procede o no la celebración de una vista ante C.A.S.A.R.H. para que los aquí recurridos presenten prueba que sostenga las alegaciones insuficientes que incluyeron en sus apelaciones ante ese foro administrativo.

Por los fundamentos que planteamos más adelante en esta Sentencia, se revocan las determinaciones emitidas por el Tribunal de Apelaciones en los casos de epígrafe y se sostienen las resoluciones dictadas por C.A.S.A.R.H.

I

Con el propósito de lograr una mayor fluidez y una mejor comprensión de los hechos que dieron origen a la controversia que hoy atendemos, procedemos a exponer por separado los hechos de cada uno de los tres recursos que fueron consolidados. Veamos.

---

[1] El inciso (d) del Art. III del Reglamento Procesal, Reglamento 7313 de C.A.S.A.R.H., 7 de marzo de 2007, en lo pertinente, establece lo siguiente:

> La Comisión podrá decretar el archivo total o parcial de una apelación, o desestimar una oposición o defensa levantada contra la misma por frivolidad, incumplimiento, abandono o prematuridad, entre otros. Entre las causas de archivo o desestimación se encuentran las siguientes instancias:
> ........
>> d. Cuando en el escrito de apelación no se exponga alegación de hecho alguna que constituya violación de ley o reglamento, o causa que, de ser creída, justifique en derecho la reclamación.

[2] Ley Especial Declarando Estado de Emergencia Fiscal y Estableciendo Plan Integral de Estabilización Fiscal para Salvar el Crédito de Puerto Rico (Ley 7), Ley Núm. 7-2009, 3 L.P.R.A. secs. 8791-8810.

A. <u>Caso CC-2010-1015</u>

La Sra. Aixa Díaz Mercado ocupaba un puesto regular de carrera, gerencial no unionado, como Demógrafa en la Oficina del Coordinador General para el Financiamiento Socioeconómico y Autogestión (Oficina del Coordinador General o agencia), mejor conocida como la Oficina de Comunidades Especiales.[3] El 17 de abril de 2009 dicha oficina le envió a la señora Díaz Mercado la "Certificación de fecha de antigüedad en la agencia", en la cual se determinó que su antigüedad en el servicio público era de <u>6 años, 10 meses y 21 días</u>. En esa carta se le indicó que si no estaba conforme con la antigüedad certificada, entonces podía presentar un "Formulario de impugnación de fecha de antigüedad certificada" ante la Oficina de Recursos Humanos de la agencia dentro del término establecido. Además, se le notificó que si no presentaba evidencia documental fehaciente o no refutaba la antigüedad certificada en el término correspondiente, sería <u>concluyente</u> la antigüedad notificada por la agencia. <u>La señora Díaz Mercado no refutó la antigüedad certificada en su caso.</u>

Posteriormente, el 25 de septiembre de 2009 la Oficina del Coordinador General remitió una carta a la señora Díaz Mercado en la que le informó que quedaría cesante de su puesto efectivo el 6 de noviembre de 2009, ello conforme al

---

[3] Véanse: Petición de *certiorari* en el caso CC-2010-1015, pág. 5; Apéndice de la Petición de *certiorari* en el caso CC-2010-1015, págs. 47-48.

plan de cesantías dispuesto en la Ley 7 y al orden de antigüedad establecido por la Junta de Reestructuración y Estabilización Fiscal (J.R.E.F.). A su vez, la agencia le indicó que si no estaba de acuerdo con la determinación de cesantía tenía derecho a solicitar revisión ante C.A.S.A.R.H. dentro del término de 30 días a partir del recibo de la notificación de la carta.

Inconforme con la determinación, el 23 de octubre de 2009 la señora Díaz Mercado presentó su apelación ante C.A.S.A.R.H. En particular, alegó que ella <u>era la única persona que ocupaba el puesto de Demógrafa en la agencia</u> (alegación 10 de la apelación ante C.A.S.A.R.H.). Además, planteó que ocupaba un puesto de carrera (alegación 9 de la apelación ante C.A.S.A.R.H.), pero luego señaló que estaba excluida de las disposiciones de la Ley 7 porque cumplía con los criterios de la definición de "empleado de confianza" de la Ley Núm. 184-2004 (Ley 184)[4] aunque no especificó qué funciones consideraba de esa naturaleza (alegaciones 23 y 26 de la apelación ante C.A.S.A.R.H.). Además, adujo que tiene un derecho propietario sobre su puesto de carrera y que éste le fue privado sin el debido proceso de ley (alegación 37 de la apelación ante C.A.S.A.R.H.). Por último, en la alegación 45 de la apelación ante C.A.S.A.R.H., indicó que en el proceso de cesantía "[n]o se tomaron en consideración las normas de

---

[4] Ley para la Administración de los Recursos Humanos en el Servicio Público, 3 L.P.R.A. sec. 1461 *et seq.*

antigüedad, ya que se mantendrán trabajando en otras áreas de la Agencia a empleados con menos años de servicio que [ella]" (Énfasis suplido.)[5] Por todo lo cual, la señora Díaz Mercado solicitó a C.A.S.A.R.H.: (1) que dejara sin efecto la cesantía; (2) la restitución inmediata al puesto de carrera como Demógrafa en la agencia; y (3) el pago retroactivo del salario y los beneficios marginales dejados de devengar.[6]

Después de varios trámites interlocutorios, el 23 de febrero de 2010 (notificada el 5 de abril de 2010) C.A.S.A.R.H. desestimó y ordenó el archivo de la apelación de la señora Díaz Mercado al entender que del escrito no surgían alegaciones de hechos que constituyeran violación de ley o reglamento ni existía una causa que justificara en derecho la reclamación. C.A.S.A.R.H. añadió que del expediente no surgía evidencia de que la señora Díaz Mercado hubiese impugnado ante la agencia sus años de antigüedad en el servicio público ni evidencia de años de antigüedad adicionales,[7] por lo que la antigüedad

---

[5] Apéndice de la Petición de *certiorari* en el caso CC-2010-1015, pág. 55.

[6] Más adelante, el 16 de febrero de 2010 la señora Díaz Mercado presentó una "Moción enmendando apelación". No obstante, es importante señalar que del expediente no surge que C.A.S.A.R.H. hubiese autorizado la enmienda a la apelación y, además, en la resolución recurrida ni siquiera se mencionó esa solicitud de enmienda. Por lo tanto, debemos concluir que C.A.S.A.R.H. no autorizó la enmienda a la apelación y, por consiguiente, no la tomó en cuenta al momento de resolver la apelación de la señora Díaz Mercado.
    Específicamente, el inciso (13) del Art. X del Reglamento Procesal de C.A.S.A.R.H. define "enmienda" como "[la] modificación de un escrito autorizado por la Comisión a solicitud de parte".

[7] Apéndice de la Petición de *certiorari* en el caso CC-2010-1015, pág. 83.

certificada y concluyente era 6 años, 10 meses y 21 días, y con ésta no cumplía el mínimo de antigüedad requerido por la Ley 7. Inconforme, la señora Díaz Mercado presentó su reconsideración ante C.A.S.A.R.H. el 23 de abril de 2010. En síntesis, reiteró que empleados unionados de la agencia que tenían menos antigüedad que ella continuaron trabajando en fecha posterior al 6 de noviembre de 2009, ello en directa violación a la Ley 7.[8] El 27 de abril de 2010, notificada el 30 de abril de 2010, C.A.S.A.R.H. denegó la reconsideración.

Insatisfecha con la decisión de C.A.S.A.R.H., el 1 de junio de 2010 la señora Díaz Mercado presentó un recurso de revisión administrativa ante el Tribunal de Apelaciones. En éste, expuso que C.A.S.A.R.H. erró "al declarar que [ella] dejó de exponer un reclamo que amerite la concesión de un remedio y desestimar la apelación". Aceptó que se encontraba dentro del grupo de empleados al cual le aplicaba la fase de cesantía dispuesta en la Ley 7 y quedaría cesante efectivo el 6 de noviembre de 2009. Sin embargo, argumentó que "un gran número de empleados que se encuentran en la misma clase que [ella], al día de hoy, permanecen laborando en la agencia aun cuando estos ostentan una menor antigüedad".[9] Ante esta situación,

---

[8] La señora Díaz Mercado incluyó los nombres de nueve empleados unionados de la agencia y sus respectivos años de antigüedad en el servicio público. Apéndice de la Petición de *certiorari* en el caso CC-2010-1015, pág. 90.

[9] Apéndice de la Petición de *certiorari* en el caso CC-2010-1015, pág. 43.

planteó la violación de su derecho a la igual protección de las leyes y el menoscabo a su derecho "de que se le reconozca la antigüedad certificada y que no fuera cesanteada previo a la cesantía de las personas que ostentan menor antigüedad en el servicio público".[10] Así, indicó que procedía la celebración de una vista evidenciaria, pues del expediente surgía una controversia de hechos y una violación a la Ley 7.[11] Por todo lo cual, la señora Díaz Mercado pidió que se dejara sin efecto la resolución de C.A.S.A.R.H., se ordenara una vista administrativa y se le reinstalara en su empleo.

Por su parte, la Oficina de la Procuradora General, en representación de la agencia, presentó su alegato el 14 de julio de 2010. En aquella ocasión expresó que "la antigüedad notificada por la agencia… es concluyente toda vez que no se impugnó la misma oportunamente, por lo que no procede que… CASARH se adentre a justipreciar dicha determinación".[12] Además, en cuanto a la alegación de la señora Díaz Mercado de que había otros empleados de menor

---

[10] Apéndice de la Petición de *certiorari* en el caso CC-2010-1015, pág. 43.

[11] La señora Díaz Mercado expuso que "[e]l derecho concedido por la [Ley 7] para que se utilice el orden de antigüedad como criterio para determinar el proceso de cesantías activa la cláusula constitucional de debido proceso de ley. Entre los derechos reconocidos bajo la cláusula de debido proceso de ley se encuentra la celebración de una vista ante un juez imparcial, la presentación de prueba y el poder confrontar la prueba en contra". Y añadió que ella "se encuentra dentro del grupo de los empleados sujetos a cesantía, pero en la aplicación de las disposiciones de la [Ley 7] ésta ha sido tratada de forma desigual y discriminatoria en violación directa a las disposiciones legales y las garantías constitucionales que le cobijan". (Énfasis suplido.) Apéndice de la Petición de *certiorari* en el caso CC-2010-1015, págs. 43-44.

[12] Apéndice de la Petición de *certiorari* en el caso CC-2010-1015, pág.114.

antigüedad que no fueron cesanteados en la agencia, la Procuradora General sostuvo que esa alegación era insustancial debido a que no se alegó que tales empleados fueran de su misma clasificación, con igual o menor antigüedad que ella, por lo que "[l]as referencias a supuesto discrimen se reducen a ser meras conjeturas, sin mayor sustancia".[13]

Luego de examinar los escritos de las partes, el 30 de agosto de 2010 (notificada el 8 de septiembre de 2010) una mayoría del panel de jueces del Tribunal de Apelaciones (Hons. Ramírez Nazario y Piñero González) revocó la resolución de C.A.S.A.R.H. y devolvió el caso para que ésta celebrara una vista evidenciaria.[14] Ese foro apelativo expresó que:

> [e]n la referida vista la señora Díaz [Mercado] tendrá oportunidad de presentar la prueba que entienda sostiene sus alegaciones, de forma que CASARH dilucide si se violentaron las disposiciones de la Ley Núm. 7, *supra*, según denunciado por [ésta] y provea el remedio que proceda [d]e ese ser el caso.[15]

El Tribunal de Apelaciones entendió que de los reclamos expuestos en la apelación ante C.A.S.A.R.H. y el recurso ante ese foro apelativo surgía que la señora Díaz

---

[13] Apéndice de la Petición de *certiorari* en el caso CC-2010-1015, pág. 113.

[14] Esa vista evidenciaria sería previa oportunidad para descubrir prueba conforme a la Sección 2.11 del Reglamento Procesal, Reglamento 7313 de C.A.S.A.R.H., 7 de marzo de 2007. Apéndice de la Petición de *certiorari* en el caso CC-2010-1015, pág. 16.

[15] Apéndice de la Petición de *certiorari* en el caso CC-2010-1015, pág. 16.

Mercado expuso alegaciones de hechos que constituirían violación a la Ley 7 por parte de la Oficina de la Coordinadora General y, de probarse ante C.A.S.A.R.H., se justificaría la concesión de remedio.  En particular, el foro apelativo intermedio esbozó que de haberse violentado el orden de cesantías dispuesto por la Ley 7, o sea, que empleados de menor antigüedad no fueron cesanteados antes que la señora Díaz Mercado, entonces ésta "pudo haber sido objeto de un trato desigual al perder su empleo y sustento antes del tiempo correspondiente".[16]  Por tal razón, el Tribunal de Apelaciones concluyó que era necesario celebrar una vista para atender el asunto sobre si en efecto no se honró el orden de antigüedad dispuesto en la Ley 7.

Mientras, el Juez Figueroa Cabán escribió un voto disidente en el que señaló que la señora Díaz Mercado "no impugna con prueba suficiente el cálculo de su antigüedad en el empleo" y lo que presenta es "una alegación general sobre incumplimiento con las normas que exigen la igual protección de las leyes".[17]  El Juez Figueroa Cabán añadió lo siguiente:

> A nuestro entender, la situación de grave crisis fiscal que, según el legislador, nuestro país experimenta, exige que este procedimiento de acceso a CASARH se interprete con la agilidad necesaria para alcanzar el propósito legislativo previamente mencionado.  De este modo, quien quiera impugnar su cesantía en el contexto de la Ley Núm. 7, supra, tiene que cumplir ciertos requisitos mínimos de

---

[16] Apéndice de la Petición de *certiorari* en el caso CC-2010-1015, pág. 13.

[17] Íd., pág. 22.

umbral. Así pues, <u>el reclamante tiene que levantar una controversia sobre antigüedad relacionada con su empleo y proveer prueba suficiente de su reclamación</u>. En nuestra opinión, <u>no basta levantar cualquier alegación genérica que impugne la antigüedad del empleo para tener acceso al foro administrativo</u>. Por el contrario, debe el reclamante sustentar con algún tipo de prueba su reclamación. (Énfasis suplido.)[18]

Más adelante en su voto disidente, el Juez Figueroa Cabán expone que "**[a]brir con demasiada facilidad la puerta del foro administrativo podría derrotar el objetivo de agilidad que requiere el legislador para atender lo que calificó como una situación urgente**". Por todo lo cual, el Juez Figueroa Cabán concluyó que "**al no impugnar su antigüedad bajo los parámetros establecidos en el Art. 37.04 de la Ley Núm. 7,** *supra*, **la determinación en controversia advino concluyente**…". (Énfasis suplido.)[19]

Inconforme con la decisión del foro apelativo intermedio, el 23 de septiembre de 2010 la Procuradora General solicitó reconsideración, pero ese tribunal denegó la petición el 14 de octubre de 2010 (notificada el 20 de octubre de 2010). Así, pues, el 22 de noviembre de 2010 la Procuradora General recurrió ante este Foro con una petición de *certiorari* y una solicitud de auxilio de jurisdicción. El 2 de diciembre de 2010 expedimos el recurso de *certiorari*, en el que se señaló como único error lo siguiente:

---

[18] Apéndice de la Petición de *certiorari* en el caso CC-2010-1015, pág. 21.

[19] Íd., pág. 23.

> **Erró el Tribunal de Apelaciones al revocar la Resolución de CASARH y ordenar una vista evidenciaria para que la recurrida pruebe sus alegaciones de que empleados de menor antigüedad que ella en otras áreas de la Agencia no fueron cesanteados, a base de alegaciones estereotipadas que no representan hechos justificativos de la concesión de un remedio, como bien entendió el foro administrativo.**

La Procuradora General expuso que la determinación del Tribunal de Apelaciones chocaba con la facultad que tiene C.A.S.A.R.H. de desestimar sumariamente las apelaciones que se presenten, cuando éstas no incluyen alegaciones que justifiquen la concesión de un remedio. Sobre esto añadió que la consecuencia del dictamen recurrido es que imposibilita que C.A.S.A.R.H utilice los mecanismos procesales que le provee su reglamento, **los cuales tienen el propósito de lograr una resolución eficaz y justa ante el sinnúmero de reclamaciones frívolas relacionadas con la implantación de la Ley 7.**

Asimismo, la Procuradora General insistió en que la señora Díaz Mercado omitió ofrecer detalles (en su apelación ante C.A.S.A.R.H.) sobre las clasificaciones y/o funciones de aquellos <u>empleados que se mantuvieron trabajando en otras áreas de la agencia aun con menor antigüedad</u> que ella *vis a vis* las suyas, por lo que se estaba ante una alegación insuficiente. Por todo lo cual, la Procuradora General nos solicitó la revocación del dictamen recurrido y la confirmación de la resolución desestimatoria de C.A.S.A.R.H., pues la señora Díaz Mercado: no contaba con la antigüedad requerida por la

J.R.E.F. (esa determinación de antigüedad se convirtió en concluyente al no ser impugnada) y no presentó alegaciones suficientes -que justificaran la concesión de remedio- sobre la supuesta ilegalidad en la implantación de la Ley 7 a su caso respecto a otros empleados de menor antigüedad.[20]

El 28 de julio de 2011 la señora Díaz Mercado presentó su alegato. En esencia, reiteró que fue cesanteada de su puesto de carrera y gerencial como demógrafa mientras "un gran número de empleados unionados con menor antigüedad permanecieron en sus puestos de trabajo hasta el mes de mayo de 2010 en contravención… a la [Ley 7] en cuanto al criterio de antigüedad". (Énfasis suplido.)[21] Además, aceptó que las alegaciones que expuso en la apelación ante C.A.S.A.R.H. eran generales debido a que era imposible obtener información específica sin el descubrimiento de prueba, pero que en la "Moción enmendando apelación" incluyó hechos específicos que demostraban que la Oficina del Coordinador General violentó el criterio de antigüedad en el proceso de cesantías. También planteó que ni la Ley 7 ni su jurisprudencia interpretativa imponen que "el criterio de antigüedad se debe reconocer entre empleados de

---

[20] Conforme nos solicitó la Procuradora General, el 20 de abril de 2011 aceptamos la petición de *certiorari* como el alegato de la peticionaria y concedimos término para que la señora Díaz Mercado presentara su alegato, pero ésta nos solicitó una prórroga y así la concedimos mediante resolución el 10 de junio de 2011 (notificada el 28 de junio de 2011).

[21] Alegato de la parte recurrida en el caso CC-2010-1015, pág. 2.

una misma clase". (Énfasis suplido.)[22]

Asimismo, la señora Díaz Mercado indicó que aunque su cesantía era efectiva al 6 de noviembre de 2009, hubo empleados que estaban en su misma clase y permanecieron en sus empleos hasta mayo de 2010 a pesar de tener menos antigüedad en el servicio público.[23]  Por todo lo cual, solicitó la confirmación del dictamen del Tribunal de Apelaciones de forma tal que se celebre la vista ordenada por ese foro, pues entiende que sí existe una controversia sobre si la autoridad nominadora implementó las disposiciones de la Ley 7 utilizando la antigüedad como único criterio para decretar las cesantías.  Así, el caso quedó sometido en los méritos el 29 de agosto de 2011.

B. Caso CC-2011-0296

La Sra. Ivelisse Marrero Marcano ocupaba un puesto como Especialista Principal en Recursos Humanos en la Administración de Servicios de Salud Mental y Contra la Adicción (A.S.S.M.C.A. o agencia).  Mediante carta de 27 de marzo de 2009, la agencia le informó que su antigüedad en el servicio público era de 7 años y que la fecha en que comenzó a trabajar en el gobierno fue el 25 de enero de 2002.  Asimismo, le notificó que si la información indicada no era correcta, entonces debía presentar -ante la agencia- la evidencia documental fehaciente con el "Formulario de

---

[22] Alegato de la parte recurrida en el caso CC-2010-1015, pág. 10.

[23] Alegato de la parte recurrida en el caso CC-2010-1015, pág. 14.

impugnación de fecha de antigüedad" en el término establecido.

El 1 de abril de 2009, la señora Marrero Marcano impugnó la fecha de antigüedad ante la agencia. Ella presentó el mencionado formulario en A.S.S.M.C.A. e indicó que no se tomó en cuenta (para calcular su fecha de antigüedad en el servicio público) el tiempo que trabajó por jornal en esa agencia. Específicamente, señaló que -según el expediente de personal- comenzó a trabajar en la agencia el 16 de octubre de 2001 (con un nombramiento por jornal) y no el 25 de enero de 2002 como adujo A.S.S.M.C.A.

El 14 de abril de 2009, la agencia emitió una "Certificación de fecha de antigüedad en la agencia" mediante la cual notificó a la señora Marrero Marcano que la fecha de ingreso al servicio público fue el 16 de octubre de 2001 y la antigüedad total era de 7 años, 5 meses y 15 días. En esa carta, la agencia le indicó que si no estaba de acuerdo con la antigüedad certificada, tenía derecho a presentar el formulario de impugnación ante la Oficina de Recursos Humanos de A.S.S.M.C.A. dentro del término correspondiente. Además, se le notificó que si no presentaba evidencia documental fehaciente o no refutaba la antigüedad notificada por la agencia en el término establecido, ésta sería concluyente. La señora Marrero Marcano no refutó esta última antigüedad certificada por la agencia en su caso.

Unos meses más tarde, el 25 de septiembre de 2009 A.S.S.M.C.A. le notificó a la señora Marrero Marcano que quedaría cesante de su puesto efectivo el 6 de noviembre de 2009, ello conforme al plan de cesantías dispuesto en la Ley 7 y al orden de antigüedad establecido por la J.R.E.F. La agencia también le informó que si no estaba conforme con la determinación de cesantía tenía derecho a pedir revisión en C.A.S.A.R.H. dentro del término de 30 días a partir del recibo de la notificación.

Antes de que la señora Marrero Marcano impugnara la determinación de cesantía, el 5 de octubre de 2009 la agencia expidió una nueva certificación en la que indicó que ésta tenía 7 años, 6 meses y 1 día de tiempo trabajado en el servicio público. Así, el 20 de octubre de 2009 la señora Marrero Marcano presentó (por derecho propio) su apelación ante C.A.S.A.R.H.

Entre otros asuntos, la señora Marrero Marcano adujo que era una empleada de carrera, su clase estaba excluida de organización sindical y su puesto no estaba cobijado por un convenio colectivo (alegaciones 1, 5 y 6 de la apelación ante C.A.S.A.R.H.). Además, planteó que la Ley 7 y su cesantía violentaron varias disposiciones constitucionales y el principio de mérito dispuesto en la Ley 184, *supra*, (alegaciones 14 a la 39 de la apelación ante C.A.S.A.R.H.). En particular, indicó que la carta de despido fue un acto de discrimen porque violentaba el principio de igualdad entre los seres humanos y porque la Ley 7 no fue aplicada

de la misma forma a todos los empleados (alegación 20 de la apelación ante C.A.S.A.R.H.). Más adelante, señaló que no se siguió el criterio de antigüedad al efectuar las cesantías, pues no cesantearon a empleados transitorios ni a empleados con menor antigüedad que ella, quienes continuaron trabajando en la agencia (alegaciones 29, 30, 34 y 35 de la apelación ante C.A.S.A.R.H.). Añadió que esos empleados con menor antigüedad ni siquiera pertenecían a los grupos excluidos en el Art. 37.02 de la Ley 7 (alegación 35 de la apelación ante C.A.S.A.R.H.). Por último, expuso que su despido fue arbitrario e inconstitucional, pues se violentó su derecho propietario al puesto de carrera sin el debido proceso de ley (alegaciones 56 y 59 de la apelación ante C.A.S.A.R.H.). Por todo lo cual, solicitó que se dejara sin efecto el despido y se le reinstalara de inmediato a su puesto.[24]

C.A.S.A.R.H. desestimó e indicó que del escrito no surgían alegaciones de hechos que constituyeran violación de ley o reglamento ni existía una causa que justificara en derecho la reclamación. Asimismo, expresó que de las

---

[24] Según surge del expediente, el 8 de marzo de 2010 la señora Marrero Marcano presentó ante C.A.S.A.R.H. una "Moción informativa asumiendo representación legal y solicitando permiso para enmendar la apelación…" y una "Apelación Enmendada". Véase Apéndice de la Petición de *certiorari* en el caso CC-2011-0296, págs. 30-51.

Sin embargo, en el expediente no consta que C.A.S.A.R.H. hubiese autorizado la enmienda a la apelación. Además, un hecho interesante es que para el 19 de febrero de 2010 (notificada el 3 de marzo de 2010) C.A.S.A.R.H. ya había desestimado y ordenado el archivo de la apelación de la señora Marrero Marcano, por lo que C.A.S.A.R.H. no pudo haber autorizado la enmienda a la apelación y, por consiguiente, no la tomó en cuenta al resolver el caso. Véase la nota 5 para la definición de "enmienda" conforme al Reglamento de C.A.S.A.R.H.

alegaciones incluidas en la apelación no surgía que la señora Marrero Marcano hubiera impugnado el total de años de antigüedad en el servicio público así como tampoco surgía evidencia de años de antigüedad adicionales. Por lo tanto, la antigüedad certificada y concluyente era 7 años, 6 meses y 1 día, y con ésta no cumplía el mínimo de antigüedad requerido por la Ley 7. Así las cosas, el 23 de marzo de 2010 la señora Marrero Marcano solicitó reconsideración y A.S.S.M.C.A. se opuso. Finalmente, el 26 de marzo de 2010 (notificada el 6 de abril de 2010) C.A.S.A.R.H. declaró "no ha lugar" a dicha petición.

Inconforme con la decisión de C.A.S.A.R.H., el 5 de mayo de 2010 la señora Marrero Marcano presentó un recurso de revisión administrativa ante el Tribunal de Apelaciones. Por su parte, el 12 de julio de 2010 la Procuradora General —representando a la agencia— presentó su escrito en oposición al recurso. Así, el 25 de octubre de 2010 (notificada el 2 de noviembre de 2010) el Tribunal de Apelaciones revocó la resolución de C.A.S.A.R.H. y devolvió el caso para que esa comisión celebrara una vista evidenciaria.[25] El foro apelativo intermedio señaló que el caso de la señora Marrero Marcano planteaba "una controversia de hechos, referente a si en efecto el orden de antigüedad prescrito por la [Ley 7] fue o no honrado y

---

[25] Dicha vista evidenciaria sería previa oportunidad para descubrir prueba conforme a la Sección 2.11 del Reglamento Procesal, Reglamento 7313 de C.A.S.A.R.H., 7 de marzo de 2007. Apéndice de la Petición de *certiorari* en el caso CC-2011-0296, pág. 235.

si existe otros criterios que justifiquen su inobservancia".[26] Por lo que, la vista ordenada tenía el fin de que la señora Marrero Marcano presentara prueba para sostener sus alegaciones, de forma tal que C.A.S.A.R.H. adjudicara si se violentaron las disposiciones de la Ley 7.

Oportunamente, la Procuradora General solicitó reconsideración y el Tribunal de Apelaciones concedió término para que la señora Marrero Marcano se expresara. Finalmente, el 9 de marzo de 2011 (notificada el 14 de marzo de 2011) el tribunal apelativo intermedio denegó la reconsideración, mas el Juez Figueroa Cabán sí hubiese reconsiderado.

Así las cosas, el 13 de abril de 2011 la Procuradora General recurrió a esta Curia con una solicitud de *certiorari*, una moción en auxilio de jurisdicción y una petición de consolidación con el recurso CC-2010-1015.[27] Como único error, la Procuradora General planteó lo siguiente:

> **Erró el Tribunal de Apelaciones al revocar la Resolución de CASARH y ordenar una vista evidenciaria para que la recurrida presente prueba que sostenga sus alegaciones, a pesar de que las mismas fueron altamente estereotipadas y no resultaban suficientes para justificar la concesión de un remedio, como bien entendió el foro administrativo a tenor con su Reglamento procesal.**

---

[26] Apéndice de la Petición de *certiorari* en el caso CC-2011-0296, pág. 234.

[27] Entiéndase Aixa Díaz Mercado v. Oficina del Coordinador General para el Fideicomiso Socioeconómico y Autogestión, CC-2010-1015.

En el recurso de *certiorari*, la Procuradora General planteó que la decisión recurrida daba al traste con la facultad de C.A.S.A.R.H., según dispuesta en su Reglamento, de resolver sumariamente las controversias que se le presentaran cuando las alegaciones fueran insuficientes para justificar la concesión de un remedio. Sobre esto, expuso lo siguiente:

> en ausencia de alegación concretizada que los alegados empleados de menor antigüedad eran de la misma clasificación que la reclamante y/o ejercían las mismas funciones, y que no fueron eximidos de la aplicación de la [Ley 7] por virtud expresa del Art. 37.02 o disposición de la JREF, se está ante una reclamación que no justifica la concesión de un remedio respecto a la cual el foro administrativo no tiene necesidad de celebrar vista administrativa y puede resolver el caso al tenor con el Artículo III, Sección (d) del Reglamento Procesal. (Énfasis omitido.)[28]

Ante esto, la Procuradora General argumentó que la señora Marrero Marcano debió identificar, como pertenecientes a su misma clasificación y funciones, los empleados que alegadamente no fueron cesanteados aun cuando tenían una antigüedad menor que ella, así como detallar que esa clasificación no fue eximida por la Ley 7 o por la J.R.E.F. Así, la Procuradora General nos solicitó la revocación de la decisión del Tribunal de Apelaciones y la confirmación de la resolución de C.A.S.A.R.H., pues la señora Marrero Marcano no tenía la antigüedad requerida por

---

[28] Petición de *certiorari* en el caso CC-2011-0296, pág. 17.

la J.R.E.F. y no presentó alegaciones suficientes que justificaran la concesión de un remedio.[29]

En auxilio de nuestra jurisdicción, el 15 de abril de 2011 ordenamos la paralización de los procedimientos en el foro administrativo y la consolidación con el recurso CC-2010-1015.

El 6 de julio de 2011 la señora Marrero Marcano presentó su alegato en oposición. En síntesis, planteó que este caso sí presenta una controversia de hechos sobre si en efecto se honró el orden de antigüedad dispuesto por la Ley 7, por lo que era necesaria la celebración de una vista evidenciaria ante C.A.S.A.R.H. Además, señaló que no venía obligada a incluir detalles en las alegaciones de su escrito de apelación "puesto que para ello es precisamente la vista administrativa".[30] Sobre esto, expuso que la pretensión de que se presenten alegaciones concretas impone "un riguroso criterio de "especificidad" que no se exige en el Reglamento Procesal promulgado por CASARH".[31] Añadió que "requerirle… una determinada "especificidad" sobre su reclamo de violación de criterio "antigüedad" es impermisible y es contrario a la firme política judicial imperante en esta jurisdicción de fomentar el mayor acceso

---

[29] A petición de la Procuradora General, el 10 de junio de 2011 acogimos su recurso como el alegato de la peticionaria.

[30] Alegato en oposición a recurso de *certiorari* en el caso CC-2011-0296, pág. 14.

[31] Íd., pág. 15.

a los foros adjudicativos".[32]  Por todo ello, adujo que C.A.S.A.R.H. erró al desestimar su apelación sin ofrecerle la oportunidad de una vista, por lo que nos solicitó que deneguemos la petición de *certiorari*.  El caso quedó sometido en los méritos el 14 de noviembre de 2011.

C. <u>Caso CC-2011-0678</u>

Los cuatro empleados que se mencionan a continuación laboraban en la Administración de Servicios y Desarrollo Agropuecuario (Administración de Servicios o agencia). La Sra. Idalia Alberty Beltrán ocupaba un puesto como Jefa de Operaciones, la Sra. Joan Mercucci Torres era Supervisora del Centro de San Germán, el Sr. Víctor O. Arocho Ramos laboraba como Jefe de Operaciones del Centro Agropecuario de San Sebastián y el Sr. José A. Toro Rodríguez tenía un puesto como Supervisor del Programa de Incentivos de Maquinaria Agrícola.

Según surge de la resolución de C.A.S.A.R.H., el 23 de abril de 2009 la agencia le envió una carta a cada uno de ellos en la que les informó sobre su antigüedad en el servicio público.  En el caso de la señora Alberty Beltrán la antigüedad era de <u>9 años</u>; de la señora Mercucci Torres era <u>4 años y 9 meses</u>; del señor Arocho Ramos era <u>5 años y 8 meses</u>; y del señor José A. Toro Rodríguez era <u>7 años y</u>

---

[32] Alegato en oposición a recurso de *certiorari* en el caso CC-2011-0296.

6 meses.[33] También surge del expediente que <u>ninguno de esos empleados impugnó la antigüedad que notificó la agencia.</u>[34]

Varios meses después, el 25 de septiembre de 2009 la Administración de Servicios les envió a estos cuatro empleados sus respectivas cartas indicándoles que quedarían cesanteados de sus puestos efectivo el 6 de noviembre de 2009, ello conforme al plan de cesantías dispuesto en la Ley 7 y al orden de antigüedad expuesto por la J.R.E.F. A su vez, la agencia les notificó que si no estaban de acuerdo con sus respectivas determinaciones de cesantía tenían derecho a solicitar revisión ante C.A.S.A.R.H. dentro del término de 30 días a partir del recibo de la notificación de la carta.

Al estar inconformes con la actuación de la agencia, el 14 de octubre de 2009 los cuatro exempleados presentaron una apelación conjunta ante C.A.S.A.R.H. En síntesis, plantearon que eran empleados de carrera y poseían una expectativa de continuidad en sus empleos, por lo que no se les podía privar de su derecho propietario sin el debido proceso de ley. Asimismo, señalaron que "siendo la [Administración de Servicios] una agencia adscrita al Departamento de Agricultura… tenía que considerarse la antigüedad de todos los empleados públicos del Departamento de Agricultura y de la [Administración de Servicios] en

---

[33] Apéndice de la Petición de *certiorari* en el caso CC-2011-0678, pág. 55.

[34] Íd.

igualdad de condiciones".[35]  Expresaron, además, que las cesantías se realizaron de <u>manera discriminatoria</u> "sin haberse observado criterios objetivos para determinar cuáles empleados debían ser cesanteados".[36]  Por todo lo cual, solicitaron la anulación de las cesantías, y el pago de los salarios y otros haberes dejados de percibir. Mientras, la agencia contestó la apelación el 4 de noviembre de 2009 con el fundamento de que las cesantías sí se efectuaron conforme a la Ley 7 y el criterio de antigüedad, y que la cantidad global de empleados a ser cesanteados fue determinada por la J.R.E.F.

El 14 de diciembre de 2009, C.A.S.A.R.H. les ordenó a los exempleados que replicaran a la contestación de la agencia y así lo hicieron el 30 de diciembre de 2009.  Allí expresaron que "la autoridad nominadora falló al determinar la antigüedad de los apelantes y cómo otros empleados en igualdad de circunstancias que los apelantes y/o con menos antigüedad que éstos permanecieron trabajando en la agencia".[37]  Añadieron que C.A.S.A.R.H. podía tomar conocimiento oficial de lo expresado por funcionarios de la J.R.E.F. en cuanto a que se habían cometido múltiples errores al evaluar los criterios para determinar los empleados que debían ser cesanteados y los que no.  Así,

---

[35] Apéndice de la Petición de *certiorari* en el caso CC-2011-0678, pág. 45.

[36] Íd.

[37] Apéndice de la Petición de *certiorari* en el caso CC-2011-0678, pág. 52.

solicitaron una vista administrativa en la que pudieran presentar prueba para sustentar sus alegaciones.

Mediante resolución de 24 de marzo de 2010 (notificada el 5 de abril de 2010), C.A.S.A.R.H. declaró "no ha lugar" la apelación de los cuatro exempleados. Concluyó que ni de las alegaciones ni de los anejos de la apelación surgía evidencia de que los exempleados hubiesen impugnado sus años de antigüedad en el servicio público así como tampoco había evidencia de años de antigüedad adicionales. Por lo que, determinó que éstos no cumplían con el requisito mínimo de antigüedad requerido para quedar exentos de las cesantías. Así, C.A.S.A.R.H. dejó vigente la determinación de cesantía y decidió no celebrar la vista pública. Los exempleados solicitaron reconsideración, mas C.A.S.A.R.H. declaró "no ha lugar" el 9 de abril de 2010 (notificada el 13 de abril de 2010).

Inconformes con la decisión de C.A.S.A.R.H., los exempleados recurrieron al Tribunal de Apelaciones el 10 de mayo de 2010; la Administración de Servicios (representada por la Procuradora General) presentó su escrito el 24 de junio de 2010. Así las cosas, el 30 de agosto de 2010 el foro apelativo intermedio revocó la decisión de C.A.S.A.R.H. y devolvió el caso para que ésta celebrara una vista en su fondo, ello para determinar si las cesantías cumplieron con los parámetros de la Ley 7 o si la agencia

erró al cesantear a esos exempleados.[38]  Sobre ese asunto, el Tribunal de Apelaciones subrayó lo siguiente:

> Los recurrentes sostienen que la CASARH erró al no concederles la oportunidad de presentar prueba en una vista a los efectos de que no fueron cesanteados otros empleados con menos antigüedad.
>
> Los recurrentes no ejercieron su derecho a cuestionar la antigüedad que les fue certificada, dentro del término provisto por la Ley 7, por lo que no les asiste derecho a levantar dicha controversia. Sin embargo, <u>sus alegaciones de que las cesantías decretadas son ilegales por no haberse seguido el criterio de antigüedad que dispone la Ley 7, requiere que se les ofrezca una oportunidad de exponer, defender o presentar prueba para sostener sus alegaciones.</u>
>
> Según el Reglamento Procesal de la CASARH, la Comisión no podrá dictar resoluciones sumarias en las apelaciones en que existan hechos materiales o esenciales controvertidos.  <u>La alegación de los recurrentes en lo referente a que fueron cesanteados de sus puestos mientras otros empleados con menor antigüedad permanecen en los mismos, constituye una controversia que plantea hechos esenciales que deben ser adjudicados, tras la celebración de una vista.</u>
> (Énfasis suplido.)[39]

La Procuradora General pidió reconsideración de la sentencia, pero el foro apelativo intermedio declaró "no ha lugar" su petición el 29 de junio de 2011 (notificada el 7 de julio de 2011).  Insatisfecha con la decisión, la Procuradora General presentó ante esta Curia una solicitud de *certiorari* el 8 de agosto de 2011.  A su vez, presentó una petición en auxilio de jurisdicción y una solicitud de consolidación con el recurso 2010-1015.  En particular, la Procuradora General señaló el siguiente error:

---

[38] Como consecuencia de un error en la notificación original de la sentencia, el Tribunal de Apelaciones emitió una notificación enmendada el 1 de junio de 2011.

[39] Apéndice de la Petición de *certiorari* en el caso CC-2011-0678, pág. 24.

**Erró el Tribunal de Apelaciones al revocar la Resolución de CASARH y ordenar una vista en su fondo para que la parte recurrida presente prueba que sostenga sus alegaciones, a pesar de que las mismas fueron altamente estereotipadas y no resultaban suficientes para justificar la concesión de un remedio.**

En su escrito, la Procuradora General enfatizó que la decisión del Tribunal de Apelaciones chocaba con la autoridad de C.A.S.A.R.H. de resolver de forma sumaria las controversias ante su consideración. Asimismo, señaló que los casos relacionados con la Ley 7 en los que se hicieran alegaciones vagas y especulativas no ameritaban la celebración de una vista administrativa ante C.A.S.A.R.H., ya que aceptar ese tipo de alegaciones "resultaría en detrimento del objetivo de agilidad requerido por el legislador para atender una situación de suma urgencia".[40] Añadió que debido a la omisión de una alegación concreta de que los empleados de menor antigüedad eran de la misma clasificación que los reclamantes o que ejercían las mismas funciones, y que no fueron eximidos de la aplicación de la Ley 7, entonces se estaba ante una reclamación que no justificaba la concesión de un remedio y, por lo tanto, no procedía la vista administrativa.

Además, la Procuradora General expresó que no existía controversia referente a que los cuatro exempleados no cumplían con el mínimo de años de antigüedad requerido por la J.R.E.F. Por todo lo cual, la Procuradora General solicitó la revocación del dictamen del foro apelativo

---

[40] Petición de *certiorari* en el caso CC-2011-0678, pág. 10.

intermedio y, en su lugar, la confirmación de la resolución de C.A.S.A.R.H. debido a que los exempleados no presentaron alegaciones suficientes que justificaran la concesión de un remedio y no tenían el mínimo de antigüedad requerido para quedar exentos del plan de cesantías de la Ley 7.

De esa forma, el 12 de agosto de 2011 expedimos el auto de *certiorari*, ordenamos la paralización de los efectos de la decisión recurrida, y consolidamos con los casos CC-2010-1015 y CC-2011-0296. Los cuatro exempleados presentaron un "Memorando en oposición a que se expida el auto de *certiorari*" el 30 de septiembre de 2011. En resumen, indicaron que C.A.S.A.R.H. había violentado su reglamento al desestimar sumariamente la apelación y más cuando basó su decisión en fundamentos que se apartaban de la controversia sobre si se les cesanteó a pesar de tener mayor antigüedad que otros que continuaron trabajando en la agencia.

Mientras, el 11 de octubre de 2011 (notificada el 17 de octubre de 2011) acogimos el recurso de *certiorari* como el alegato de la peticionaria y concedimos término para que los cuatro exempleados presentaran su alegato. Allí le apercibimos que si no recibíamos su escrito, el caso quedaría sometido sin el beneficio de su comparecencia. Así, el caso quedó sometido en los méritos el 14 de noviembre de 2011 sin la comparecencia de la parte recurrida (los cuatro exempleados).

II

A.  La Ley Núm. 7-2009 y el criterio de antigüedad

La Asamblea Legislativa de Puerto Rico aprobó el 9 de marzo de 2009 la "Ley Especial Declarando Estado de Emergencia Fiscal y Estableciendo Plan Integral de Estabilización Fiscal para Salvar el Crédito de Puerto Rico" (Ley 7), Ley Núm. 7-2009, 3 L.P.R.A. secs. 8791-8810. El propósito de esa legislación fue implantar unas medidas dirigidas a la estabilización fiscal y la reconstrucción económica de la Isla ante la grave crisis fiscal que atravesaba el Gobierno de Puerto Rico.  Como sabemos, una de las medidas de reducción de gastos para atender el déficit estructural incluyó la reducción sustancial en la nómina gubernamental, lo que se atendió mediante el plan de reducción de gastos dispuesto en el Capítulo III de la Ley 7 (Arts. 33 al 46 de la Ley 7, 3 L.P.R.A. secs. 8791-8810). Sobre este asunto, la Legislatura expresó lo siguiente en la Exposición de Motivos del mencionado estatuto: "[c]omo el problema del déficit estructural es un problema del Gobierno en su totalidad, es apropiado implantar un remedio a nivel del Gobierno en su totalidad que trate a todos los empleados públicos por igual y que se rija por el criterio objetivo de antigüedad en el servicio público".  (Énfasis suplido.)

Con el fin de reducir la nómina gubernamental, la Ley 7 estableció un plan de tres fases que estaría en manos de la J.R.E.F.  En particular, la Fase II consistía en un

plan de cesantías involuntarias para eliminar puestos de empleados en el servicio público, el cual comenzaría con los empleados de nombramiento transitorio o irregular y luego con aquellos que tuvieran nombramientos permanentes o de carrera. En cuanto a estos últimos, se observaría exclusivamente el criterio de antigüedad para que así fueran cesanteados en primer término los empleados de menor antigüedad.[41] De esta manera se garantizaría la aplicación equitativa del criterio objetivo de antigüedad a través de todo el Gobierno de Puerto Rico. Este plan de cesantías sólo aplicaría a los empleados de las agencias de la Rama Ejecutiva del Gobierno de Puerto Rico que no estuvieran excluidos por el Art. 37.02 de la Ley 7, 3 L.P.R.A. sec. 8797.[42]

Por su parte, el Art. 37.04(b)(4) de la Ley 7, 3 L.P.R.A. sec. 8799 (b)(4), dispone que para determinar la antigüedad de los empleados afectados se considerarán todos los servicios prestados en el servicio público, ello independientemente de las disposiciones de los convenios colectivos, reglamentos, cartas circulares y otros documentos normativos.

En Sánchez et al. v. Depto. Vivienda et al., 184 D.P.R. 95 (2011), dispusimos que a la J.R.E.F. se le delegó la autoridad de establecer una fecha de corte para

---

[41] Art. 37.04 (b)(3) de la Ley 7, 3 L.P.R.A. sec. 8799(b)(3).

[42] En relación con la definición de "agencia", véase el Art. 33(a) de la Ley 7, 3 L.P.R.A. sec. 8791(a). En cuanto a la aplicabilidad del estatuto y las agencias exentas del mismo, refiérase al Art. 34 de la Ley 7, 3 L.P.R.A. sec. 8792.

computar la antigüedad en el servicio público de aquellos empleados afectados por la Ley 7. Específicamente, expresamos que por medio del Art. 37.04 (b)(5) de la Ley 7,[43] la Asamblea Legislativa creó la J.R.E.F. y mediante el Art. 37.04 (b)(6)[44] le otorgó a esa Junta una delegación amplia de poderes para lograr instrumentalizar la Fase II dispuesta en la Ley 7, la que incluyó el proceso de cesantías.

Ya en Domínguez Castro et al. v. E.L.A. I, 178 D.P.R. 1, 94 (2010), *certiorari* denegado, Domínguez Castro v. Puerto Rico, 131 S. Ct. 152, 562 U.S. ___ (2010), habíamos señalado que el Art. 37.04(b) de la Ley 7 "establece claramente que las facultades que se le delegan a la J.R.E.F. y que están relacionadas a las cesantías de los empleados públicos, deben guiarse y regirse por el criterio de antigüedad". (Énfasis suplido.) Así, pues, a través del Art. 37.04 (b)(8) de la Ley 7,[45] la Legislatura ordenó que las agencias identificaran y certificaran a la J.R.E.F. la antigüedad de cada uno de sus empleados. De esa forma, el 2 de noviembre de 2009 la J.R.E.F. emitió la Carta Circular Núm. 2009-16, en la que se establecía el proceso para determinar los empleados públicos que se afectarían por el plan de cesantías establecido en el Capítulo III de la Ley 7. Asimismo, la J.R.E.F. incluyó las tres determinaciones sobre antigüedad que se utilizaron

---

[43] 3 L.P.R.A. sec. 8799(b)(5).

[44] 3 L.P.R.A. sec. 8799(b)(6).

[45] 3 L.P.R.A. sec. 8799(b)(8).

para establecer cuáles empleados públicos serían afectados por el plan de cesantías. Las determinaciones fueron las siguientes:

> (1) Para asegurar que el cómputo de la antigüedad se realizara de manera uniforme para todos los empleados públicos, la JREF estableció una fecha de corte de antigüedad del 17 de abril de 2009. Es decir, la antigüedad para todos los empleados públicos se determinó usando los años en el servicio público acumulados hasta dicha fecha.

> (2) En la primera ronda de cesantías, efectiva el 10 de julio de 2009, fueron afectados empleados públicos que a la fecha de corte de 17 de abril de 2009 contaban con una antigüedad en el servicio público igual o menor a nueve (9) meses y diecisiete (17) días contados.

> (3) En la segunda ronda de cesantías, efectiva el 6 de noviembre de 2009 o la fecha posterior que le sea notificada al empleado, según haya sido autorizado por la JREF, fueron afectados empleados públicos que a la fecha de corte de 17 de abril de 2009 contaban con una antigüedad en el servicio público igual o menor a trece (13) años, seis (6) meses y cero (0) días.

Lo anterior refleja que la J.R.E.F. actuó conforme a las facultades delegadas por la Ley 7, pues estableció una fecha objetiva y uniforme de cómputo de antigüedad con el fin de "brindar uniformidad al proceso y evitar cualquier señalamiento de discrimen por ideas políticas y otros".[46] No obstante, la Ley 7 proveyó para que aquel empleado público que considerara que su despido no fue conforme al criterio de antigüedad entonces tuviera la oportunidad de impugnar la determinación de la agencia pertinente.

---

[46] Sánchez et al. v. Depto. Vivienda et al., 184 D.P.R. 95 (2011). Véase la mencionada Opinión para una referencia más completa sobre el asunto de la delegación de poderes y otras controversias relacionadas con la Ley 7.

B. <u>El proceso de impugnación de antigüedad</u>

La Asamblea Legislativa ordenó a las agencias que identificaran y certificaran a la J.R.E.F. la antigüedad de sus empleados. Asimismo, las agencias certificarían -por escrito- la fecha de antigüedad a los empleados afectados y en caso de que éstos pertenecieran a una organización sindical la agencia también le notificaría a ésta. En dicha comunicación, la agencia le informaba al empleado el derecho a exponer y fundamentar -por escrito- su versión acerca de su fecha de antigüedad. Art. 37.04(b)(8) de la Ley 7, 3 L.P.R.A. sec. 8799(b)(8).

Una vez notificado del asunto, el empleado afectado tenía un término de treinta días para presentar -ante la agencia- el formulario provisto con copia de la evidencia documental fehaciente que refutara la antigüedad certificada por la agencia. Art. 37.04(b)(9) de la Ley 7, 3 L.P.R.A. sec. 8799(b)(9). En caso de que el empleado público no refutara o presentara dicha evidencia para sostener su posición, entonces se utilizaría la antigüedad notificada por la agencia y ésta sería concluyente para todo propósito relacionado con el Capítulo III de la Ley 7. Art. 37.04 (b)(10), 3 L.P.R.A. sec. 8799(b)(10). Por el contrario, si el empleado público presentaba evidencia documental fehaciente que controvirtiera la antigüedad notificada, en ese caso la agencia no podía tomar una determinación final sobre la antigüedad sin antes

concederle al empleado una vista previa.  Art. 37.04(b)(11) de la Ley 7, 3 L.P.R.A. sec. 8799(b)(11).

De acuerdo con el Art. 37.04(b)(12) de la Ley 7, 3 L.P.R.A. sec. 8799(b)(12), ya fuese que el empleado no presentara evidencia documental fehaciente para refutar la antigüedad notificada o que habiéndola presentado se le brindó una vista previa, la agencia notificaría la determinación final al empleado y le apercibiría sobre su derecho a solicitar revisión ante C.A.S.A.R.H. No obstante, según el Art. 37.04(b)(13) de la Ley 7, esa revisión sería sólo en cuanto al asunto de la antigüedad.[47] Por último, se establece que la agencia notificaría la cesantía al empleado al menos treinta días antes de la fecha de efectividad de la misma.  Art. 37.04(b)(15) de la Ley 7, 3 L.P.R.A. sec. 8799(b)(15).

C. C.A.S.A.R.H. y su Reglamento Procesal

La Legislatura de Puerto Rico dispuso que C.A.S.A.R.H.[48] sería el foro con "expertise" para dirimir las controversias relacionadas con las acciones tomadas al

---

[47] 3 L.P.R.A. sec. 8799(b)(13).

[48] Valga mencionar que luego de la aprobación de la Ley 7 el 9 de marzo de 2009, en virtud del Plan de Reorganización Núm. 2 de 26 de julio de 2010 se creó la Comisión Apelativa del Servicio Público (C.A.S.P.) para fusionar la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (C.A.S.A.R.H.) y la Comisión de Relaciones del Trabajo del Servicio Público (C.R.T.S.P.).
Específicamente, C.A.S.P. es un organismo cuasi-judicial en la Rama Ejecutiva, que se especializa en asuntos obrero-patronales y del principio de mérito.  Dicho ente atiende casos laborales, querellas y asuntos de administración de recursos humanos, ello en relación con los empleados cobijados por la Ley Núm. 45-1998, *infra*, y aquellos cubiertos por la Ley Núm. 184-2004, *infra*.  Además, C.A.S.P. atiende los casos instados al amparo de la Carta de Derechos de los Empleados de una Organización Laboral, Ley Núm. 333-2004.  Véase <u>DACo v. AFSCME</u>, res. el 27 de marzo de 2012, 185 D.P.R. ___, 2012 T.S.P.R. 58 n. 12.

amparo del Capítulo III de la Ley 7, es decir los Arts. 33 al 46 del mencionado estatuto, 3 L.P.R.A. secs. 8791-8810. Según dispuesto en el Art. 46(a) de la Ley 7, 3 L.P.R.A. sec. 8810(a), esa Comisión tendría jurisdicción para atender las apelaciones surgidas como consecuencia de las acciones o las decisiones en relación con todo aquello que no confligiera con dicho Capítulo, de aquellos empleados no cubiertos por la Ley Núm. 45-1998.[49] Asimismo, tendría jurisdicción apelativa voluntaria sobre tales acciones o decisiones tomadas en cuanto a los empleados no organizados sindicalmente de aquellas agencias excluidas de la aplicación de las disposiciones de la Ley Núm. 184-2004.[50]

El mismo Art. 46(a) de la Ley 7, *supra*, señala que los procedimientos ante C.A.S.A.R.H. se regirían por lo dispuesto en la Ley Núm. 184-2004 y el Reglamento Procesal de C.A.S.A.R.H.[51] Según se establece en el mencionado reglamento, su propósito es "establecer y actualizar los mecanismos y normas procesales que regirán el descargo de la función adjudicativa de [C.A.S.A.R.H.] y aplicará en todos los procedimientos ante la Comisión".[52]

En lo pertinente al presente caso, la Sección 2.1(a)(vii) del Reglamento Procesal de C.A.S.A.R.H.

---

[49] Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, Ley Núm. 45-1998, 3 L.P.R.A. sec. 1451 *et seq*.

[50] Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico de 2004, Ley Núm. 184-2004, 3 L.P.R.A. sec. 1461 *et seq*.

[51] Reglamento Procesal, Reglamento 7313 de C.A.S.A.R.H., 7 de marzo de 2007 (Reglamento Procesal de C.A.S.A.R.H.).

[52] Reglamento Procesal de C.A.S.A.R.H., pág. 1.

establece que la solicitud de apelación deberá incluir lo siguiente: (a) exposición de hechos constitutivos de reclamo o infracción; (b) solicitud de remedio; y (c) disposición legal o reglamentaria en que se base la solicitud de remedio que se suplica, si se conoce. **Mientras, la Sec. 2.1(a)(viii) dispone que en las reclamaciones de discrimen se deberán "[e]xpresar detalladamente en el escrito original los hechos específicos en que basa su alegación, los cuales tienen que establecer de su faz la existencia de actuación discriminatoria".**

Por su parte, el Art. III del mencionado Reglamento Procesal señala que C.A.S.A.R.H. "podrá decretar el archivo total o parcial de una apelación, o desestimar una oposición o defensa levantada contra la misma por frivolidad, incumplimiento, abandono o prematuridad, entre otros". (Énfasis suplido.)[53] Entre las causas para archivar o desestimar encontramos la dispuesta por el inciso (d) de dicho artículo, el cual lee de la siguiente manera:

> d. Cuando en el escrito de apelación no se exponga alegación de hecho alguna que constituya violación de ley o reglamento, o causa que, de ser creída, justifique en derecho la reclamación.

D. La revisión judicial de las decisiones emitidas por las agencias administrativas

La función central de la revisión judicial, según nos señala el profesor Demetrio Fernández, "es asegurarse de que las agencias actúan dentro del marco del poder delegado

---

[53] Reglamento Procesal de C.A.S.A.R.H., pág. 14.

y consistentes con la política legislativa".[54] En nuestro ordenamiento jurídico es norma reiterada que los tribunales apelativos debemos conceder gran deferencia a las determinaciones de las agencias administrativas, esto por razón de la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado. Asoc. Fcias. v. Caribe Specialty et al. II, 179 D.P.R. 923, 940 (2010).[55] Por esa razón, las determinaciones de las agencias poseen una presunción de legalidad y corrección que los tribunales debemos respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas. Batista, Nobbe v. Jta. Directores, res. el 3 de abril de 2012, 185 D.P.R. ___, 2012 T.S.P.R. 63.[56] Esto significa que quien impugne la decisión administrativa tiene que presentar evidencia suficiente para derrotar esa presunción y no puede descansar en meras alegaciones. Pacheco v. Estancias, 160 D.P.R. 409, 431 (2003).[57]

La Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), 3 L.P.R.A. sec. 2175, delimita la facultad que

---

[54] D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed. rev., Bogotá, Ed. Forum, 2001, pág. 517.

[55] Véanse, además: Pereira Suárez v. Jta. Dir. Cond., 182 D.P.R. 485, 511 (2011); Com. Seg. v. Real Legacy Assurance, 179 D.P.R. 692, 717 (2010), Mun. de San Juan v. CRIM, 178 D.P.R. 163, 175 (2010); Martínez v. Rosado, 165 D.P.R. 582, 589 (2005); Otero v. Toyota, 163 D.P.R. 716, 727 (2005); Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 130 (1998).

[56] IFCO Recycling v. Aut. Desp. Sólidos, res. el 27 de febrero de 2012, 184 D.P.R. ___, 2012 T.S.P.R. 35; Torres Santiago v. Depto. Justicia, 181 D.P.R. 969, 1002-1003 (2011); Calderón Otero v. C.F.S.E., 181 D.P.R. 386, 395-396 (2011).

[57] Véase, también, Com. Vec. Pro-Mej., Inc. v. J.P., 147 D.P.R. 750, 761 (1999).

tienen los tribunales para revisar las decisiones administrativas. Calderón Otero v. C.F.S.E., 181 D.P.R. 386, 396 (2011). En particular, esa disposición establece que:

§2175. Revisión-Alcance

   El Tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
   Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
   Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.

Así, pues, vemos que la revisión judicial de las decisiones administrativas se limita a considerar los siguientes tres aspectos: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y (3) si las conclusiones de derecho del ente administrativo fueron correctas, ello mediante una revisión completa y absoluta. Pagán Santiago et al. v. ASR, res. el 10 de abril de 2012, 185 D.P.R. ___, 2012 T.S.P.R. 68.[58]

Conforme a la L.P.A.U. y según hemos reconocido en sinnúmero de ocasiones, las determinaciones de hecho de una agencia se sostendrán si éstas se fundamentan en evidencia sustancial que conste en el expediente administrativo

---

[58] Véanse: Asoc. Fcias. v. Caribe Specialty et al. II, 179 D.P.R. 923, 940 (2010); Rivera v. A & C Development Corp., 144 D.P.R. 450 (1997); Fernández Quiñones, op cit., pág. 534.

considerado en su totalidad. <u>Torres Santiago v. Depto.
Justicia</u>, 181 D.P.R. 969, 1003 (2011).[59] Para tales fines,
la evidencia sustancial es aquella prueba relevante que una
mente racional podría considerar como adecuada para
sostener una conclusión. <u>JP, Plaza Santa Isabel v. Cordero
Badillo</u>, 177 D.P.R. 177, 187 (2009).[60] En varias ocasiones
hemos indicado que el propósito de la regla de evidencia
sustancial, aplicable a las determinaciones de hecho,
es "evitar la sustitución del criterio del organismo
administrativo en materia especializada por el criterio del
tribunal revisor". <u>P.R.T.C. v. J. Reg. Tel. de P.R.</u>,
151 D.P.R. 269, 282 (2000).[61]

Asimismo, hemos señalado que el principio rector en la
revisión judicial de las determinaciones e interpretaciones
de una agencia es el criterio de la razonabilidad, esto es
la razonabilidad en la actuación de la agencia recurrida.
<u>Mun. San Juan v. Plaza Las Américas</u>, 169 D.P.R. 310, 323
(2006).[62] Conforme a ello, la revisión judicial se debe
limitar a determinar si la agencia actuó de manera
arbitraria o ilegal, o en forma tan irrazonable que su

---

[59] Véanse, también: <u>Asoc. Fcias. v. Caribe Specialty et al. II</u>, *supra*;
<u>JP, Plaza Santa Isabel v. Cordero Badillo</u>, 177 D.P.R. 177, 186-187
(2009); <u>Hernández, Álvarez v. Centro Unido</u>, 168 D.P.R. 592, 614-615
(2006).

[60] <u>Torres Santiago v. Depto. Justicia</u>, 181 D.P.R. 969, 1003 (2011);
<u>Pacheco v. Estancias</u>, 160 D.P.R. 409, 432 (2003).

[61] <u>Misión Ind. P.R. v. J.P.</u>, *supra*, pág. 131; <u>Reyes Salcedo v. Policía
de P.R.</u>, 143 D.P.R. 85, 95 (1997).

[62] Véase, además, <u>Rebollo v. Yiyi Motors</u>, 161 D.P.R. 69, 76 (2004).

actuación constituye un abuso de discreción. Calderón Otero v. C.F.S.E., *supra*, pág. 396.

En cuanto a las conclusiones de derecho de las agencias administrativas, la Sec. 4.5 de la L.P.A.U., *supra*, dispone que éstas "serán revisables en todos sus aspectos por el tribunal", ello sin ataduras a norma o criterio alguno. No obstante, esto no significa que "el tribunal pueda descartar ligeramente las conclusiones e interpretaciones de la agencia gubernamental, sustituyendo el criterio de ésta por el propio". Calderón Otero v. C.F.S.E., *supra*, pág. 397.[63] Asimismo, hemos expresado que las conclusiones de derecho del ente administrativo deben ser conforme al mandato de la ley y si así ocurre entonces deben ser sostenidas por el foro revisor. Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 133 (1998).

Como ya hemos esbozado en varias instancias, en caso de que la interpretación de ley que haya hecho la agencia sea razonable -aunque ésta no fuese la única razonable-, los tribunales debemos darle deferencia al foro administrativo. Hernández, Álvarez v. Centro Unido, 168 D.P.R. 592, 616 (2006). Sin embargo, esa deferencia a la decisión de una agencia administrativa cede cuando: (1) la decisión no se basa en evidencia sustancial; (2) el ente administrativo erró en la aplicación de la ley o reglamento; (3) la agencia actuó de forma arbitraria,

---

[63] Véanse, también: Mun. San Juan v. Plaza Las Américas, 169 D.P.R. 310, 324 (2006); P.R.T.C. v. J. Reg. Tel. de P.R., 151 D.P.R. 269, 282 (2000); Pacheco v. Estancias, *supra*, pág. 433.

irrazonable o ilegal; o (4) la actuación administrativa afecta derechos fundamentales o conduce a la comisión de injusticias. Mun. San Juan v. Plaza Las Américas, *supra*, pág. 324; Martínez v. Rosado, 165 D.P.R. 582, 590 (2005).[64]

Evaluemos, entonces, el señalamiento de error indicado por la parte peticionaria, la Procuradora General, quien acude en representación de las agencias administrativas antes mencionadas.

III

La controversia que debemos resolver en esta ocasión es relativamente sencilla. Específicamente, si procede o no la celebración de una vista ante C.A.S.A.R.H. para que los aquí recurridos presenten prueba que sostenga las alegaciones insuficientes que incluyeron en sus respectivas apelaciones ante ese foro administrativo. En los tres casos de epígrafe, el tribunal apelativo intermedio revocó la decisión de C.A.S.A.R.H. y ordenó que ésta celebrara una vista con el mencionado propósito.[65] No obstante, luego de examinar cuidadosamente el expediente y analizar el derecho aplicable al caso, estamos convencidos de que el Tribunal de Apelaciones erró al resolver como lo hizo.

En síntesis, en los tres casos la Procuradora General planteó que la decisión del Tribunal de Apelaciones de

---

[64] Véase, además, Costa, Piovanetti v. Caguas Expressway, 149 D.P.R. 881, 889 (1999).

[65] Es importante señalar que tanto el Tribunal de Apelaciones como las partes en el pleito han utilizado indistintamente los términos "vista evidenciaria", "vista administrativa" y "vista en su fondo" para referirse a la vista ante C.A.S.A.R.H. No obstante, el término correcto es "vista pública", el cual se define como "audiencia contenciosa celebrada ante un Oficial Examinador o agente autorizado". Art. X, inciso (29) del Reglamento Procesal de C.A.S.A.R.H., *supra*.

ordenar una vista chocaba con la facultad de C.A.S.A.R.H. para desestimar sumariamente las apelaciones que se le presenten, cuando éstas no incluyen alegaciones que justifiquen la concesión de un remedio. A su vez, argumentó en los tres casos que la decisión del foro apelativo intermedio imposibilitaba que C.A.S.A.R.H. utilizara los mecanismos procesales que le provee su reglamento, los cuales tienen el fin de lograr una resolución eficaz y justa ante la gran cantidad de reclamaciones frívolas relacionadas con la implantación de la Ley 7. En cuanto a la insuficiencia de las alegaciones, la Procuradora General argumentó que los recurridos -en sus respectivas apelaciones ante C.A.S.A.R.H.- omitieron identificar, como pertenecientes a su misma clasificación y funciones, aquellos empleados que alegadamente no fueron cesanteados a pesar de tener menor antigüedad que ellos.

A. Caso CC-2010-1015

En el caso de la señora Díaz Mercado, ésta planteó en su alegato que un gran número de empleados unionados que tenían menor antigüedad que ella estuvieron en sus puestos de trabajo hasta mayo de 2010, ello en contra de la Ley 7 y el criterio de antigüedad. Asimismo, informó que empleados de su misma clase permanecieron en sus puestos hasta mayo de 2010 aun con menos años de servicio público que ella. También señaló que ni la Ley 7 ni la jurisprudencia han establecido que el criterio de antigüedad se debe reconocer entre empleados de una misma clase. A su vez, argumentó

que en el proceso de cesantías <u>no se tomó en cuenta el criterio de antigüedad</u> puesto que empleados con menos años de servicio seguirían laborando en otras áreas de la agencia. Además, vale mencionar que la señora Díaz Mercado aceptó que las alegaciones expuestas en su apelación ante C.A.S.A.R.H. eran generales.

Aquí lo cierto es que la señora Díaz Mercado no era unionada, sino una empleada de carrera y gerencial, por lo que claramente no estaba en la misma situación que los empleados unionados de la agencia, a quienes se les pospuso su cesantía porque la J.R.E.F. ordenó la renotificación de las cesantías. En cuanto al señalamiento de que hubo empleados de su misma clase que permanecieron en sus puestos a pesar de tener menor antigüedad que ella, es pertinente expresar que la misma señora Díaz Mercado ha indicado que ella era la <u>única persona</u> que ocupaba el puesto de Demógrafa en la Oficina del Coordinador General. Por consiguiente, no era posible que otro empleado de su misma clasificación y menor antigüedad permaneciera en su empleo. Mientras, el planteamiento de la señora Díaz Mercado en torno a que ni la Ley 7 ni la jurisprudencia han establecido que el criterio de antigüedad se debe reconocer entre empleados de una misma clase constituye un argumento futil, puesto que es totalmente claro que la estructura de la administración de los recursos humanos en el Gobierno de Puerto Rico se hace conforme a clases y clasificaciones de puestos. Por último, es innegable que la señora Díaz

Mercado aceptó que sus alegaciones en la apelación ante C.A.S.A.R.H. eran generales y por ello intentó suplementarlas con una "Moción enmendando apelación". No obstante, como mencionamos anteriormente, no surge del expediente que C.A.S.A.R.H. hubiese aceptado dicha enmienda a la apelación, por lo que esa petición se entiende como no presentada.

B. CC-2011-0296

En relación con el caso de la señora Marrero Marcano, ésta indicó en su alegato que no tenía que incluir detalles en las alegaciones de su apelación ante C.A.S.A.R.H., pues para eso era la vista ante ese foro. Además, adujo que exigirle alegaciones específicas sobre su reclamo de violación del criterio de antigüedad era impermisible, pues esto no lo requería el Reglamento Procesal de C.A.S.A.R.H. Es imperativo señalar que debido a que la señora Marrero Marcano alegó -en su apelación ante C.A.S.A.R.H.- que su despido fue un acto discriminatorio porque la Ley 7 no fue aplicada de la misma forma a todos los empleados y no se siguió el criterio de antigüedad al efectuar las cesantías, sí era requisito del Reglamento Procesal de C.A.S.A.R.H. el "[e]xpresar detalladamente en el escrito original los hechos específicos en que basa su alegación, los cuales tienen que establecer de su faz la existencia de actuación discriminatoria".[66]

---

[66] Véase Sec. 2.1(a)(viii) del Reglamento Procesal de C.A.S.A.R.H.

C. <u>CC-2011-0678</u>

Respecto al caso de las señoras Alberty Beltrán y Mercucci Torres, y los señores Arocho Ramos y Toro Rodríguez, éstos no presentaron su alegato conforme le ordenamos; sólo habían presentado un memorando en oposición a que se expidiera el recurso. No obstante, hacemos referencia a que estos cuatro recurridos expresaron -en su apelación ante C.A.S.A.R.H.- que en su agencia las cesantías se hicieron de <u>manera discriminatoria</u>, pues no se observaron criterios objetivos para evaluar cuáles empleados debían ser cesanteados. Como ya mencionamos, ante sus alegaciones de discrimen en el proceso de cesantías era preciso que incluyeran -en el escrito original ante C.A.S.A.R.H.- los hechos específicos en que basaban esa alegación.

Como vemos, en los tres casos reseñados, los recurridos presentaron ante C.A.S.A.R.H. unos escritos de apelación en los que de forma muy general esbozaron el siguiente planteamiento: "X" fue cesanteado como consecuencia de la implantación de la Ley 7 en la agencia "Y" mientras que empleados con menos años de servicio público que "X" continuaron trabajando en la agencia "Y". Es decir, alegaron de forma sucinta un asunto que requería entrar en detalles particulares como lo serían mencionar aquellos otros empleados de la misma clasificación y funciones que permanecieron en la agencia, el tiempo aproximado de antigüedad de éstos en el servicio público, y

que no fueron eximidos de la aplicación de la Ley 7 por virtud expresa del Art. 37.02 de dicho estatuto.

Los aquí recurridos tenían un reclamo basado en un alegado discrimen, específicamente relacionado con el proceso de cesantías, debido a que ellos aseguraban que la Ley 7 no fue aplicada de la misma manera a todos los empleados y no se siguió el criterio de antigüedad dispuesto en dicho estatuto. Ante esa realidad, lo cierto es que procedía que estos presentaran ante C.A.S.A.R.H. un escrito de apelación conforme a la Sec. 2.1(a)(viii) del Reglamento Procesal de C.A.S.A.R.H. Esa disposición establece que en las reclamaciones de discrimen se deben "[e]xpresar detalladamente en el escrito original los hechos específicos en que se basa su alegación, los cuales tienen que establecer de su faz la existencia de actuación discriminatoria". Ninguno de los recurridos cumplió con esa importante disposición del Reglamento Procesal. Sin duda, tal incumplimiento resulta suficiente para que la agencia desestimara como lo hizo, máxime cuando de ninguno de los expedientes surge razón alguna por la cual los recurridos no pudieron obtener al menos evidencia prima facie que sostuviera sus alegaciones.[67]

---

[67] Asimismo, es importante recalcar -ante los señalamientos esbozados en la Opinión Disidente del Juez Presidente señor Hernández Denton- que los recurridos no alegaron en sus escritos ante el Tribunal de Apelaciones y ante esta Curia lo dispuesto en la Sec. 2.1 (d) del Reglamento Procesal, Reglamento 7313 de C.A.S.A.R.H., 7 de marzo de 2007. Es decir, en ningún momento los recurridos plantearon que ante el "defecto" en la presentación de sus apelaciones en C.A.S.A.R.H. procedía una notificación de defecto con el propósito de una posterior subsanación de deficiencia en el término dispuesto.

Como sabemos, nuestro Derecho es rogado y corresponde a las partes hacer los planteamientos que fueren menester. Tal como mencionamos en

Es patente que C.A.S.A.R.H. tuvo ante su consideración unas apelaciones con alegaciones insuficientes en las que claramente no se justificaba la concesión de un remedio, ya que omitían información específica requerida en este tipo de reclamaciones. Ante esa situación, C.A.S.A.R.H. -en fiel cumplimiento con su reglamento- desestimó y ordenó el archivo de las apelaciones de los recurridos al entender que no surgían alegaciones de hechos que constituyeran violación de ley o reglamento ni existía una causa que justificara en derecho las reclamaciones. Para ese proceder, el foro administrativo utilizó el mecanismo provisto por el inciso (d) del Art. III de su Reglamento Procesal, es decir el archivo total o parcial de una apelación. Posteriormente, el Tribunal de Apelaciones revocó a C.A.S.A.R.H. y ordenó la celebración de una vista en los mencionados casos de manera tal que los aquí recurridos pudieran presentar prueba para sostener sus alegaciones y así C.A.S.A.R.H. pudiera dilucidar si se violentaron las disposiciones de la Ley 7.

Concluimos que C.A.S.A.R.H. actuó conforme a derecho, y sus conclusiones se fundamentaron en prueba sustancial que obra en el expediente y en su interpretación de la normativa aplicable. La actuación de C.A.S.A.R.H. se dio dentro del marco de razonabilidad, por lo que el Tribunal

_____

S.L.G. Lloréns v. Srio. de Justicia, 152 D.P.R. 2, 8 (2000), nuestro sistema es uno adversativo de derecho rogado que descansa sobre la premisa de que las partes, cuidando sus derechos e intereses, son los mejores guardianes de la pureza de los procesos.

de Apelaciones debió otorgarle deferencia a la determinación que tomó ese foro administrativo en cada uno de los casos reseñados. Al no hacerlo así, el Tribunal de Apelaciones erró en su proceder. Por consiguiente, resolvemos que no procede la celebración de una vista ante C.A.S.A.R.H. para que los aquí recurridos presenten evidencia que sostenga las alegaciones insuficientes que incluyeron en sus apelaciones ante ese foro administrativo.

IV

Por los fundamentos antes mencionados, este Tribunal revoca las sentencias dictadas por el Tribunal de Apelaciones en los casos de epígrafe y, en consecuencia, se sostienen las resoluciones emitidas por C.A.S.A.R.H.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton emitió Opinión Disidente. La Jueza Asociada señora Fiol Matta disiente sin opinión escrita. La Juez Asociada señora Rodríguez Rodríguez hace constar la siguiente expresión: "La Juez Asociada señora Rodríguez Rodríguez disiente de este caso por las mismas razones que la llevaron a emitir una Opinión Disidente en *Domínguez Castro v. E.L.A. I.*, 178 D.P.R. 1, 158".

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Aixa Díaz Mercado, etc.

    Peticionaria

       v.

Oficina del Coordinador General
para el Fideicomiso Socio-
económico y Autogestión, et al

    Recurridos

CC-2010-1015
CC-2011-0678
CC-2011-0296

Opinión Disidente emitida por el Juez Presidente señor HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 25 de febrero de 2013.

Nuevamente, no podemos estar de acuerdo con el proceder de una mayoría de este Tribunal respecto a una controversia relacionada con la Ley Núm. 7-2009 (Ley 7), 3 L.P.R.A. secs. 8791-8810. En esta ocasión, optó por desestimar apelaciones presentadas por servidores públicos cesanteados, a pesar de que el Reglamento Procesal de la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (C.A.S.A.R.H.) impide ese curso de acción. Por tal razón, además de disentir por las mismas razones expresadas en nuestro disenso en Domínguez Castro v. E.L.A., 178 D.P.R. 1, 101 (2010), nos vemos obligados a hacer constar los siguientes pronunciamientos.

**I.**

La Sentencia emitida por una mayoría de este Tribunal atiende tres recursos en los cuales distintos servidores públicos apelaron oportunamente ante la C.A.S.A.R.H. sus respectivas cesantías amparadas en la Ley 7. Todas estas cesantías eran efectivas al 6 de noviembre de 2009. No está en controversia el hecho de que los apelantes no cumplían con la antigüedad requerida para estar exentos de la Ley 7, *supra*.

La primera apelación fue presentada por la Sra. Aixa Díaz Mercado. Ella ocupaba un puesto regular de carrera, gerencial no unionado, como Demógrafa en la Oficina de Comunidades Especiales. La segunda apelación fue presentada por la Sra. Ivelisse Marrero Marcano, quien ocupaba un puesto como Especialista Principal en Recursos Humanos en la Administración de Servicios de Salud Mental y Contra la Adicción (A.S.S.M.C.A.). La tercera apelación fue presentada conjuntamente por cuatro empleados que laboraban en la Administración de Servicios y Desarrollo Agropecuario (ASDA). En esencia, todos los apelantes alegan que sus cesantías fueron discriminatorias porque no se observó el orden de antigüedad. Indicaron que empleados de menor antigüedad permanecieron en sus puestos, pero no los identificaron en sus apelaciones.

La C.A.S.A.R.H., sin celebrar una vista evidenciaria, desestimó las tres apelaciones por separado tras concluir que las alegaciones eran insuficientes para la concesión de un remedio. El Tribunal de Apelaciones revocó las tres

resoluciones emitidas por la C.A.S.A.R.H. y ordenó la celebración de una vista. Inconforme en los tres casos, el Procurador General acudió ante nos solicitando que revoquemos al foro apelativo intermedio. Expedimos y consolidamos los tres recursos.

En síntesis, el Procurador General planteó que la C.A.S.A.R.H. tenía facultad para resolver sumariamente las controversias ante su consideración. Adujo que los recurridos omitieron identificar en sus respectivas apelaciones ante la C.A.S.A.R.H a aquellos empleados que alegadamente no fueron cesanteados a pesar de tener menor antigüedad que ellos y pertenecer a su misma clasificación. Además, argumentó que la decisión del Tribunal de Apelaciones imposibilitaba que la C.A.S.A.R.H. utilizara los mecanismos procesales que le provee su reglamento para lograr una resolución eficaz y justa de las numerosas "reclamaciones frívolas" relacionadas con la implantación de la Ley 7, *supra*.

Una mayoría de este Tribunal acoge los planteamientos del Procurador General y revoca al Tribunal de Apelaciones. En lo pertinente a la controversia que dirimimos, expone que la Sec. 2.1(a)(viii) del Reglamento Procesal de la C.A.S.A.R.H.[68] (Reglamento) establece que las reclamaciones de discrimen tienen que detallar en el escrito original hechos que establezcan de su faz la existencia de alguna actuación discriminatoria. Acto seguido, señala que el inciso (d) del Art. III del Reglamento, *supra*, establece que la Comisión podrá archivar o desestimar una apelación cuando el escrito

---

[68] Reglamento Procesal, Reglamento Núm. 7313 del Departamento de Estado, 7 de marzo de 2007.

de apelación no exponga alguna alegación de hecho que justifique la reclamación en derecho.

Al aplicar el derecho a los hechos, la Sentencia interpreta aisladamente estas dos disposiciones y determina que ninguno de los recurridos cumplió con la Sec. 2.1(a)(viii) del Reglamento, *supra*, pues no identificaron en sus respectivos escritos de apelación a los empleados que no fueron cesanteados antes que ellos, a pesar de tener menor antigüedad en el servicio público. Así, sostiene que las alegaciones contenidas en las apelaciones ante la C.A.S.A.R.H. fueron insuficientes, por lo que procede su desestimación. Esto, sin celebrar una vista evidenciaria. Por los fundamentos que esbozamos a continuación, disentimos de este proceder.

## II.

La Asamblea Legislativa designó a la C.A.S.A.R.H. como el foro con jurisdicción para atender las controversias que surgieran a raíz de la implantación de la Ley 7, *supra.* Los procedimientos ante dicha Comisión se regirían por la Ley Núm. 184-2004 y el Reglamento Procesal de la C.A.S.A.R.H. Art. 46(a) de la Ley 7, 3 L.P.R.A. sec. 8810(a).

Al respecto, es importante recordar la norma reiterada de que las agencias administrativas están obligadas a observar estrictamente los reglamentos que promulgan para facilitar su proceso decisional y limitar el alcance de su discreción. Hernández Chiquez v. FSE, 152 D.P.R. 941, 952 (2001); Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70, 79 (2000); García Cabán v. U.P.R., 120 D.P.R. 167, 175

(1987). Consecuentemente, la C.A.S.A.R.H. está obligada a cumplir con lo promulgado en su Reglamento Procesal, *supra*. Veamos lo que este establece con relación al caso ante nos.

La Sec. 2.1(a)(viii) del Reglamento, *supra*, dispone que las reclamaciones de discrimen deberán "[e]xpresar detalladamente en el escrito original los hechos específicos en que basa su alegación, los cuales tienen que establecer de su faz la existencia de actuación discriminatoria".

Más adelante, la Sec. 2.1(d) del Reglamento, *supra*, omitida en la Opinión mayoritaria, establece que:

La Comisión podrá luego de investigada y analizada una solicitud de apelación desestimar la misma. **Ante un defecto en la radicación en el escrito de solicitud de apelación inicial de los establecidos en la sección 2.1(a)** ó 2.1(g), del presente reglamento, **la Secretaría remitirá una notificación de defecto indicando que deberá subsanar la deficiencia en un término improrrogable de cinco (5) días laborales** a partir de la fecha de envío de la notificación de defecto.

Subsanado el error dentro del término, se le otorgará número de apelación retrotrayendo la fecha de radicación a la fecha de presentado el escrito inicial.

Expirado el término de cinco (5) días para subsanar el error sin que se haya corregido el mismo conllevará que el escrito de apelación se tenga por no radicado.

Ante una solicitud de apelación defectuosa que no se haya corregido, la Secretaría emitirá una notificación de devolución de documento por incumplimiento. La parte promovente podrá en el término de diez (10) días calendario a partir de la fecha de envío de la notificación de deficiencia, solicitar revisión a la Comisión en pleno, cuya determinación será final conforme la facultad otorgada en la sección 13.14(2) de la Ley Núm. 184, ante. (Énfasis suplido).

Como vimos, el requisito de que las reclamaciones de discrimen detallen en el escrito original los hechos específicos en que están basadas, de manera que se establezca de su faz la existencia de actuación discriminatoria, está preceptuado en la Sec. 2.1(a)(viii) del Reglamento, *supra*.

Por consiguiente, de acuerdo a la Sec. 2.1(d) del mismo cuerpo reglamentario, *supra*, lo que procedía ante un incumplimiento con ese requisito era que la Secretaría notificara el defecto al apelante y le concediera cinco días para subsanarlo. Véanse además Sec. 8.3 del Art. VIII y Sec. 9.3 del Art. IX del Reglamento, *supra*.[69] Si transcurren los cinco días sin que se haya corregido el defecto, la apelación se tendrá por no presentada. Esta determinación sería revisable por la Comisión en pleno.

Por otra parte, el inciso (d) del Art. III del Reglamento, establece que:

La Comisión podrá decretar el archivo total o parcial de una apelación, o desestimar una oposición o defensa levantada contra la misma por frivolidad, incumplimiento, abandono o prematuridad, entre otros. Entre las causas de archivo o desestimación se encuentran las siguientes instancias:
[…]
d. Cuando en el escrito de apelación no se exponga alegación de hecho alguna que constituya violación de ley o reglamento, o causa que, de ser creída, justifique en derecho la reclamación.

[…]

j. Cuando no se corrijan las deficiencias señaladas por la Secretaria de la Comisión.

---

[69] La Sec. 8.3 del Art. VIII del Reglamento, *supra*, dispone que: "[t]odo documento que sea devuelto por el/la Secretario(a) de la Comisión por no cumplir con las disposiciones de la ley o de este reglamento deberá corregirse dentro de los próximos cinco (5) días calendario, a partir de la fecha de la notificación de la deficiencia". Por otra parte, la Sec. 9.3 del Art. IX del Reglamento, *supra*, establece que:

El/la Secretario(a) verificará que todos los escritos que se presenten para la consideración de la Comisión cumplan con las disposiciones de la ley y de este reglamento. Cualquier escrito que no cumpla con dichas disposiciones se anotará por el/la Secretario(a) el hecho de su presentación y lo devolverá con su señalamiento de las deficiencias encontradas y que deben ser corregidas según este reglamento.

En cuanto a la facultad de la C.A.S.A.R.H. de disponer sumariamente de algunas apelaciones presentadas ante su consideración, la Sec. 6.1 del Reglamento, *supra*, establece que "[e]n cualquier reclamación en la cual la Comisión tenga ante sí una **controversia de derecho**, podrá emitir la resolución sumaria, sin sujeción a ningún otro trámite procesal". (Énfasis suplido). Más adelante, la Sec. 6.4 del mismo cuerpo reglamentario dictamina que **no se podrán dictar resoluciones sumarias en las apelaciones en que existan hechos materiales o esenciales controvertidos**. De hecho, la Sec. 4.2 del Reglamento dictamina que "[e]n aquellas circunstancias donde existe controversia sobre hechos esenciales, la Comisión **ordenará** la celebración de una vista pública con citación de las partes". (Énfasis suplido).

### III.

En los casos ante nos, la C.A.S.A.R.H. determinó que los escritos de apelación de los servidores públicos cesanteados incumplieron con el requisito de que las reclamaciones de discrimen detallen en el escrito original hechos específicos que establezcan de su faz la existencia de actuación discriminatoria. De acuerdo a las disposiciones reglamentarias citadas anteriormente, la Comisión debió entonces notificar el defecto a los apelantes y concederles cinco días para corregir sus escritos de apelación. No debió imponer como primera opción la drástica sanción de desestimar sus apelaciones.

Por otra parte, una mayoría de este Tribunal se ampara incorrectamente en el inciso (d) del Art. III del Reglamento,

*supra*, el cual permite la desestimación de una apelación que no expone alegación alguna que amerite la concesión de un remedio. En primer lugar, reiteramos que, antes de considerar desestimar las apelaciones en controversia, la C.A.S.A.R.H. debió notificar a los apelantes el defecto de insuficiencia en las alegaciones para brindarles la oportunidad de corregirlo.

En segundo lugar, debemos recordar que los recurridos alegaron en sus respectivas apelaciones que fueron cesanteados a pesar de haber otros empleados que tenían menor antigüedad que ellos, en contravención al orden de antigüedad prescrito en el Art. 37.04(b)(3) de la Ley Núm. 7, 3 L.P.R.A. sec. 8799(b)(3). De probarse lo alegado, estos servidores públicos cesanteados sí tendrían derecho a la concesión de un remedio. Por ende, tampoco podían desestimarse sus apelaciones en virtud del inciso (d) del Art. III del Reglamento, *supra*.

De hecho, amerita señalar que el inciso (j) del Art. III, *supra*, incluye como motivo de archivo o desestimación independiente que no se corrijan las deficiencias señaladas por la Secretaría de la Comisión. Dado que el incumplimiento en controversia está incluido entre los defectos subsanables y la ausencia de corrección luego de notificado el defecto puede acarrear la desestimación de la apelación, resulta injusto que se imponga esta sanción a un apelante por un defecto que nunca le fue notificado y el cual nunca tuvo la oportunidad de subsanar, tal y como lo permite el Reglamento de la C.A.S.A.R.H., *supra*.

En tercer lugar, respecto a la facultad de la C.A.S.A.R.H. de resolver sumariamente apelaciones ante su consideración, la Sec. 6.1 del Reglamento, *supra*, solo confiere a la Comisión facultad para resolver sumariamente reclamaciones en las cuales tenga ante sí una controversia de derecho. Asimismo, la Sec. 6.4 del Reglamento, *supra,* reitera que la Comisión no podrá dictar resoluciones sumarias en aquellas apelaciones en las que exista controversia de hechos materiales o esenciales.

De brindar a los apelantes la oportunidad de corregir sus escritos originales y estos así hacerlo, lo que resta por resolver no es una controversia de derecho, sino una de hechos: si las agencias siguieron o no el orden de antigüedad al efectuar las cesantías, según preceptuado por la Ley 7, *supra.* Por tanto, la C.A.S.A.R.H. no tenía facultad para adjudicarlas sumariamente. Todo lo contrario. De acuerdo a la Sec. 4.2 del Reglamento, *supra*, la C.A.S.A.R.H. tendría que ordenar la celebración de una vista pública con citación de las partes en las tres apelaciones, por existir controversia sobre hechos esenciales. Ello, claro está, luego de que la Comisión notifique el defecto de insuficiencia en las alegaciones a los apelantes y estos lo subsanen.

IV.

Por todo lo anterior, ante los hechos específicos de este caso*,* entendemos que procede que se devuelvan los casos a la C.A.S.A.R.H. para que esta notifique el defecto conforme a la Sec. 2.1(d) antes citada. Así, se brindaría a los apelantes la oportunidad de corregir sus escritos de

apelación mencionando, al menos, un empleado de menor antigüedad perteneciente a su misma clasificación, que no fue cesanteado antes que ellos. Esto, sin excluir la posibilidad de que, luego de realizadas las investigaciones y el descubrimiento de prueba correspondientes, los apelantes puedan presentar evidencia de otros empleados de menor antigüedad que permanecieron en sus puestos luego de las cesantías apeladas.

Federico Hernández Denton
Juez Presidente